

**FILED**

**JUN 28 2021**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ravi Anand<br><br>        Plaintiff<br><br>v.<br><br>Match Group Inc.<br><br>        Defendant | 1:21-cv-03459<br>Judge Thomas M. Durkin<br>Magistrate Judge Susan E. Cox<br><br><br><br>JURY DEMANDED |

## COMPLAINT

Plaintiff, Ravi Anand, complains of Defendant, Match Group Inc. as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Ravi Anand, is a citizen of the State of Illinois and resident of Cook County, Illinois.

2. Defendant, Match Group Inc. is a Texas Corporation with its principal place of business in Dallas Texas.

3. This Court has jurisdiction over Plaintiff's claims based upon diversity of the Parties. Defendant is a Texas Corporation with its Principal place of business in Texas. Plaintiff is a citizen of the State of Illinois and resident of Cook County Illinois. Furthermore, the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs. Therefore, there is diversity of citizenship.

4. Venue is proper in this district pursuant to 28 U.S.C. 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

5. Plaintiff made a $5000.00 wire transfer at the direction of Margaret Solomon, whom Plaintiff met on Match.com (Match.com is included in Defendant's portfolio companies). The wire transfer went to Jerome Young on April 9th, 2019. Plaintiff confirmed with TD Bank and TD Bank stated that there is no account with the number provided.

6. According to Reuters.com, Match Group Inc is providing dating products through its portfolio companies which are available globally. The Company's portfolio of brands includes Tinder, Match, Meetic, OkCupid, Hinge, Pairs, PlentyOfFish, and OurTime, and other brands which are designed for users to find connection.

7. Plaintiff and Margaret Solomon entered into a written contract in April of 2019. Margaret Solomon explained to Plaintiff that she was in touch with her father's attorney about her inheritance in gold. For Plaintiff's assistance in the matter of her selling the gold and taking care of the document fees for $5000.00, Plaintiff was to receive 45% of the inheritance, depending on if the gold was sold.

8. The $5000.00 wire transfer was used to pay Al Ethihad Gold Refinery for document fees, in Dubai.

9. Plaintiff also was put in touch with and communicated with Margaret Solomon's friend, Alex Wire, who confirmed the inheritance and confirmed Margaret Solomon's financial wealth. Margaret Solomon put Plaintiff in touch with

Mubarak Fadhel Al Mazrouei. Mubarak alleged that he worked for Al Ethihad Gold Refinery and he worked on the terms of the deal with Plaintiff.

10. Plaintiff contacted Al Etihad Gold Refinery in Dubai. They confirmed that the certificate of Deposit **(Exhibit A)** and the Dubai Courts Certificate of Ownership, Responsible Gold Certificate **(Exhibit B),** are a scam and fraud. See attached cash receipt for $5000.00 **(Exhibit C).**

11. Margaret Solomon advised Plaintiff that Jerome Young was someone that worked at TD Bank in Dubai, and this was the best way to wire the funds to her.

12. There have been phone bills incurred to Dubai and Ghana for over $700.00. This matter has also negatively impacted Plaintiff's career and personally.

13. Margaret Solomon put Plaintiff in touch with John, a potential buyer for the gold, who resides in Ghana. Margaret was traveling to Ghana and was staying at a hotel there. She asked Plaintiff to pay her hotel bill, but Plaintiff refused. John was working with Steven Johnson and Patricia Ross, Diplomats/clearing agents in America. This was in 2019. Plaintiff also received a call from the hotel that Margaret was staying at in Ghana. They said if Plaintiff did not pay them the hotel bill that Margaret was not paying, they were going to take her to the police station and prosecute her. Plaintiff did not pay.

14. There are services that Defendant should provide under the "Match.com Terms of Use Agreement", which were not provided by Defendant and led to Plaintiff being damaged.

15. Defendant had a duty to undertake actions.

16. Defendant engaged in various forms of unconscionable conduct "with regard to how it markets and operates its online dating services" The following conduct is unconscionable:

   a. Representing itself as a legitimate service for single adults to meet each other online and accepting subscriptions fees from subscribers and then failing to provide the service represented and offered; Furthermore, Defendant's product, Match.com is said to be designed for users to find connection, when in reality it scams and frauds the users out of money and puts their lives in danger;

   b. It is unconscionable to allow a significant amount of the profiles of the purportedly active subscribers to belong to inactive accounts (i.e. accounts that have been canceled or expired) that cannot be contacted, and/or fake and fraudulent profiles posted by scammers and others;

   c. Permitting, condoning, or acquiescing in the posting of fake or fraudulent profiles by international internet scammers or others; thereby creating the false impression that millions of persons were active subscribers or worse, exposing Plaintiff and other users to frauds and other schemes;

   d. Failing to accurately disclose its active and reachable subscriber base;

   e. Falsely labeling inactive profiles as "active";

   f. Failing to police its site from the proliferation of false and fraudulent profiles;

   g. Failing to take reasonable steps to remove and block scammers, even after certain profiles have been reported;

h. Failing to disclose to subscribers that Match's **online dating** service contains mainly inactive profiles and/or fake profiles from internet scammers;

i. Failing to provide adequate information and tools on how to recognize and report scamming activity;

j. Failing to monitor and block internet Protocol ("IP") addresses from certain countries from where scamming activity flourishes (i.e., Nigeria, Ghana, Russia, Eastern Europe, Malaysia, and other locations);

k. Intentionally leaving profiles of inactive subscribers viewable and searchable on its websites far beyond their date of inactivity or cancellation;

l. Taking virtually no steps to remove inactive users from view until a complaint is received by the former user of that account;

m. Falsely labeling profiles as "active within a certain amount of days or active within a certain amount of hours when the accounts belong to cancelled and/or inactive accounts that could not be contacted;

n. Sending emails of suggested 'matches' to its subscribers and inactive subscribers who cannot be contacted;

o. Sending former and inactive subscribers "winks" falsely informing them that a potential match is trying to contact them in order to bait individual to renew their subscriptions (only to find out after they do so that the supposed seeker does not exist or cannot be contacted);

p. Failing to effectively vet new profiles to determine whether they are fake or fraudulent despite easily discernable "red flags" (including repeated use of imagery and language, and use of notorious IP address origins);

5

q. Approving and posting different profiles with the same exact photographs and groups of photographs in different cities and towns throughout the Unites States;

r. Approving and posting fraudulent profiles with famous and notorious actors and models;

s. Falsely representing that Match customer care approves each profile individually when in fact profiles are automatically approved;

t. Failing to report or investigate scammers that repeatedly post fraudulent profiles on Match;

u. Failing to effectively police its site to monitor and remove fake and fraudulent subscriber profiles that remain viewable by unwitting subscribers;

v. Engaging in fraudulent or misleading business practices for the purpose of inducing individuals to renew their subscriptions, i.e., sending to paid subscribers whose subscriptions are about to expire an electronic communication, or "wink" that falsely advises the subscriber that persons who are active Match subscribers are trying to contact them;

w. Falsely representing that Match subscribers are looking for serious long-term relationships when Match knew or should have known that many of its subscribers are inactive, fake or fraudulent profiles.

## COUNT I
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES

17. Plaintiff Ravi Anand incorporates paragraphs 1-16 above.

6

18. The Illinois Consumer Fraud and Deceptive Practices Act, Ill. Rev. Stat. Ch. 121 ½, 262 provides in part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, …misrepresentation…of any material fact,…or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act,"….in the conduct of any trade or commerce are hereby declared unlawful….

19. The Illinois Uniform Deceptive Trade Practices Act, Ill. Rev. Stat. Ch. 121 ½, 312, provides in part:

A person engages in a deceptive trade practice when, in the course of his business,…he:

2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;…..

5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;…

12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

20. Defendant holds itself out as a company that is designed for users to find connections. However, Defendant allows its site to be littered with fraudulent profiles by scammers which puts users in danger. Defendant put Plaintiff in

7

danger and Plaintiff suffered damages. Defendant's false and misleading statements constitute unfair methods of competition, false representations of fact, false statements of sponsorship, affiliation, approval, certification and status likely to create a misunderstanding among consumers generally all in violation of the Illinois Consumer Fraud Act.

WHEREFORE, Plaintiff, Ravi Anand, requests that the Court enter judgement in its favor and against Defendant, as follows:

A. Ordering Defendant to account for and to disgorge to Ravi Anand any and all profits it realized as a result of its unlawful conduct;

B. Awarding Plaintiff Compensatory Damages in the amount of $1,000,000.00

C. Awarding Plaintiff Punitive Damages in the amount of $2,000,000.00;

D. Awarding Plaintiff its costs and attorneys fees incurred in connection with this action; and

E. Awarding Plaintiff such further relief as the Court deems proper.

## COUNT II

## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES

21. Plaintiff, Ravi Anand, incorporates paragraphs 1-20 above.

22. Defendant's false and misleading statements concerning the validity of the services it is offering constitute deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act.

23. Defendant willfully engaged in the deceptive trade practices alleged herein. Defendant holds its site as designed for users to find in connections. In reality, the

site is full of fraudulent profiles posted by scammers, which put the users in danger. Plaintiff's was put in danger, was scammed, and suffered damages.

WHEREFORE, Ravi Anand, requests that the Court enter judgment in its favor and against Defendant, as follows:

 A. Awarding Plaintiff its costs and attorney fees incurred in connection with this action; and

 B. Awarding Plaintiff Compensatory Damages in the amount of $1,000,000.00

 C. Awarding Plaintiff Punitive Damages in the amount of $2,000,000.00.

 D. Awarding such further relief as the Court deems proper.

## COUNT III

## BREACH OF CONTRACT

24. Plaintiff Ravi Anand incorporates paragraphs 1-23 above.

25. In breaching of the Agreement, Defendant knowingly allowed fraudulent profiles to be displayed on its website. Defendant made Plaintiff believe Defendant's site was designed for users to find connections. However, the site is littered with fraudulent profiles posted by scammers that put the users in danger. Through the actions above, Defendant breached their contract with Ravi Anand.

26. As a consequence of Defendant's breach of contract, Ravi Anand has been damaged. Defendant's breaches of their contract with Ravi Anand has caused and will continue to cause damage and irreparable harm to Ravi Anand unless Defendant is ejoined from further breaches.

27. Through the actions above, Defendant breached their contract with Ravi Anand, received money from Ravi Anand, under an agreement that they would perform certain services

described above. Defendant never performed the services. This breach of contract has cause damage to Ravi Anand.

WHEREFORE, Ravi Anand, requests that the Court enter judgment in its favor and against Defendant, as follows:

    A. Awarding Plaintiff compensatory damages in excess of $5,000,000.00;

    B. Awarding Plaintiff such further relief as the Court deems proper.

## COUNT IV

## UNJUST ENRICHMENT

28. Plaintiff Ravi Anand incorporates paragraphs 1-27 above. This Count is pled in the alternative with respect to Count III for Breach of Contract, with respect to Defendant knowingly allowing fraudulent profiles on its site.

29. Defendant has collected revenue from Ravi Anand's Match.com subscription when it did not have a right to do so. Defendant allowed fraudulent profiles to be posted on its site.

30. Defendant has been unjustly enriched by its wrongful conduct to the detriment of Ravi Anand. Defendant holds its site as designed for users to find in connections. In reality, the site is full of fraudulent profiles posted by scammers, which put the users in danger. Plaintiff was put in danger, was scammed, and suffered damages.

WHEREFORE, Ravi Anand, requests this Court to enter judgment in its favor and against Defendant, as follows:

A. Ordering Defendant to account for and disgorge all profits it received as a consequence of its memberships for Ravi Anand;

B. Awarding Plaintiff compensatory damages in the amount of $1,000,00.00;

C. Awarding Plaintiff Punitive Damages in the amount of $2,000,000.00;

D. Awarding Plaintiff such other relief deemed just and appropriate.

## COUNT V

## FRAUD

31. Plaintiff, Ravi Anand, incorporates paragraphs 1-30 above.

32. Through the actions above, Defendant, made material misrepresentations and false statements of fact to Plaintiff that Defendant knew were false, including the misrepresentation that Defendant had a platform with profiles that were all legitimate, did not contain fraudulent profiles that were knowingly and/or negligently left on the website for members to be taken advantage of. Defendant knowingly allowed fraudulent profiles to be displayed on its website. Defendant made Plaintiff believe Defendant's site was designed for users to find connections. However, the site is littered with fraudulent profiles posted by scammers that put the users in danger.

33. Defendant intended that Plaintiff would rely on these misrepresentations and false statements of fact, which caused damage and irreparable harm to Plaintiff.

WHEREFORE, Ravi Anand, requests this Court to enter judgment in its favor and against Defendant, as follows:

A. Awarding Plaintiff Compensatory Damages in the amount of $2,000,00.00

B. Awarding Plaintiff Punitive Damages in the amount of $4,000,000.00;

C. Awarding Plaintiff such other relief deemed just and appropriate.

D. That Defendant be enjoined from using its website and dating platform in its current form
E. Plaintiff be granted such other further relief as the Court may deem proper and just.

Respectfully Submitted,

_____/s/Ravi Anand_____
Its Attorney
Ravi Anand, Attorney at Law, P.C.
150 S Wacker Dr. Suite 2400
Chicago, IL 60606
(708) 642-6735; Fax (708) 263-0857
Atty Code: 59286

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Ravi Anand  
Plaintiff )  
)  
v. )  
)  
)  

Match Group Inc.  
Defendant

## JURY DEMAND

Plaintiff demands trial by Jury.

/s/ Ravi Anand  
_____  
Ravi Anand

"EXHIBIT A"



# AL ETIHAD GOLD REFINERY

الإتحاد جولد

# CERTIFICATE OF DEPOSIT

| | |
|---|---|
| SECURITY CODE | GWICL/FN/RT/16 |
| TRANSACTION CODE | GWICL/29/2004 |
| CERTIFICATE OF DEPOSIT CODE | LS/ZZ/29/2004 |
| DEPOSIT CODE | FV/0036/YZO |
| SERIAL NO. | 00238 |
| ITEM(S) | TREASURE |
| DATE OF DEPOSIT | 8TH MARCH, 2004 |
| PURPOSE OF DEPOSIT | SAFE-KEEPING |
| NAME OF DEPOSITOR | MR. SOLOMON BRIGHT |
| NAME OF BENEFICIARY | MARGARET SOLOMON |

Remarks: In the absence of the Depositor only the next of Kin or the Beneficiary has the mandate to claim the consignment with at least two (2) days notification prior to the collection and the balance would be calculated and pay on the date of collection.

**Received with full proof of ownership.**

Demurrage charges attract a fee of US$10.00 per DAY.

WAREHOUSE NO.23, UMM SUQEIM ROAD, OPP. LULU HYPERMARKET AL QUOZ IND.3 DUBAI

SIGN/DATE..................
(DIRECTOR)

MR. SOLOMON BRIGHT
(DEPOSITOR)

"EXHIBIT B"



# DUBAI COURTS
## CERTIFICATE OF OWNERSHIP

I hearby certify that Mr./ Mrs./ Ms./ .......MARGARET / RAVI ANAND....................

of ........555 W MADISON ST APT 4701  CHICAGO IL 60661......... is

the bonafide owner of Consignement Security Code Number ....SS/900/115..............
Deposited at Al Etihad Gold Refinery. Content of 180bars.

Given under the office of Dubai Courts of United Arab Emitates, on
this day of 17th April, 2019 which is signed and sealed.

17 /04 / 19

For Registrar of Private Matter Arising

"EXHIBIT C"

# Cash Receipt

Receipt Number: 971(0)26664340
Date: 12 - APRIL - 19

Received From **MORGARET SOLOMON** the amount of $ **5000.00**

For **DOCUMENTATION**

Current Balance: $ 6,560.00
Payment Amount: $ 5000.00
Balance Due: $ 1,560.00

| ✓ | Cash |
|---|------|
|   | Cheque |
|   | Money Order |

Received By: M. F. AL MAZROUEI